Let's take the next matter, Laws v. Warden. Good morning, Your Honors. May it please the Court, Kara DeVito for Appellant Brian Laws. Your Honors, I have to express to the Court that when an attorney such as myself is assigned one of these AEDPA appeals and we get the COA, sometimes we're nonplussed by issues that are laid out for us. And the first issue in this COA is whether the district court erred in failing to consider illiteracy as a ground for equitable tolling. I have acknowledged in both the opening and the reply briefs that there's no evidence of incompetence in the pleadings that Mr. Laws filed. First, the magistrate says, it appears Mr. Laws had no difficulty in considering illiteracy as a ground for equitable tolling. It appears Mr. Laws had no difficulty communicating with the court and that his petition was understandable, cogent, and concise. To begin with, the magistrate overlooked or failed to mention the fact that this petition was prepared on Mr. Laws' behalf by his cellmate, a fellow inmate. And even if the magistrate was aware of that, the magistrate also was talking about pleadings filed with the district court after the EIPA petition was initiated. The question is, was Mr. Laws competent during the five-year period he was blowing his statute of limitations? And nothing that he filed in the district court would address that issue. By analogy, Your Honors, in Pape v. Robinson, which is a U.S. Supreme Court case that talks about whether a defendant was competent to stand trial, the Supreme Court was critical of the Illinois Supreme Court because the Illinois Supreme Court concluded that Mr. Robinson was competent to stand trial because he had been cogent during his colloquies with the trial court. And the Supreme Court said, that may be true, that may be one in two. Well, at trial, he was found competent to stand trial. Correct. The Illinois Supreme Court said he was. No, no. I'm talking about your person's. Oh, I believe that's true. Mr. Laws was found competent to stand trial at trial. That's finished. I mean, that was never overturned. So we know that at that date, he was competent to stand trial. We know that in, was it 2000, he said to the courts, I'm competent now. And so there's, I think what you're saying, there's a hiatus between the day the trial ended or the sentencing took place and 2000. Where's his evidence that was in front of the trial court on that subject? In front of the, yes, in front of the district court, Your Honor. In front of the district court. I think that's the problem. The magistrate has come to this conclusion on an inadequate record. Well, if there's no evidence before the court, then isn't it still the rule that he has the burden of persuasion? He has a burden. And so if there's no evidence before the court and A has the burden of persuasion, I thought that meant that A lost. It's not that there's no evidence before the court. There's incomplete evidence before the court. But the evidence that is before the court certainly gives rise to a concern. There's a genuine basis for concern on the evidence here. If Your Honors would just look at the excerpts of record from pages 12 through 16, I believe that provides an adequate basis to suggest there was a problem here. Pages 13, 14, and 16 are medical records, and they establish that Mr. Laws is alcoholic, drug-addicted, suicidal, schizophrenic, bipolar, and a paranoid psychotic. We know that in August of 1993, he tried to commit suicide by something I've never heard of before. He aspirated solid food to choke himself, and he was fed pureed foods thereafter. That's August of 93. He had three and a half years from then until April of 97 to file his EIPA petition. But there's nothing in the record. There is an absence of evidence to suggest that he was competent or not competent during that period of time. The next thing we have is an excerpt of record 100. January 26, 2001, he tries another suicide attempt. Now, he does have the burden of persuasion. Certainly he does. But just these bare medical records suggest he's at the mercy of mental illnesses that people don't overcome by themselves. They need medication. They need treatment. And what he asked for in his motion for reconsideration was an evidentiary hearing. I beg your pardon. Kennedy. All you need for competency to stand trial is to understand what you're being charged with and be able to communicate with your lawyer. Yes, Your Honor. To me, that's always been a very low threshold. But that's not the issue here, is it? I'm sorry, Your Honor. I didn't hear you. The competency question here is a different competency question, isn't it? Of course. The threshold problem here is that we're questioning whether his competence equitably told the EIPA statute. He didn't even have an attorney who could counsel him about filing the petition. He was on his own and having to decipher what has now become a labyrinthian maze. But competency to proceed pro se, for example, at a trial is precisely the same standard as competency to stand trial, correct, according to the Supreme Court? Yes, it is, Your Honor. So competency to proceed pro se is the same standard as competency to proceed trial. We know that at least at one time. What date was that when he was convicted? I'm not sure. I think it was 91. 91. We know that at least then he was competent. And the Court may recall he was found competent, but after a rather protracted penal code 1368. Well, sure, but he was found competent, so we know he was competent then. But we don't know whether he was competent after August of 1993, and we don't know whether he was restored to competency at a point in time in the 5 years between the date his EIPA statute ran and the day he filed his first petition. And if the competency to stand trial is the same standard whether one is pro se or represented by an attorney, that standard requires you to be able to assist in your own defense. And from what the record shows at the moment, it's likely Mr. Laws was not able to do so. We really can't know that for certain unless the district court allows an evidentiary hearing at which Mr. Laws' medical and psychiatric records from that period of time can be subpoenaed. And I believe one of the things that's pointed out in the motion for reconsideration, which was filed and prepared by Mr. Laws' cellmate, is that when you're incarcerated in prison, you have almost no ability to subpoena these records on your own behalf. Now, the motion for reconsideration, I think you presented that to us, and there's some indication that never was filed with the district court. Absolutely so, Your Honor. I can't find any indication it was. It's not filed on the court's docket, however. So on what – how do we review the district court's decision on the basis of something that was not before it? Under the mailbox rule, it's presumed to have been filed, however. Well, I know the mailbox rule, but I'm just asking maybe a slightly different question. Do we say, well, now we know that something was floating around out there that the district court should vacate it and send it back so the court can look at the something it didn't have? Is that what we should do? Certainly we should make our own decision based upon that, because that's not properly before us. It wasn't in the record, right? Correct. So? Well, we're assuming it's not in the record because it's not on the district court docket, and there appears to be no ruling by the court on the motion. Well, I take it it's not in the district court file either. I believe I got my copy of it from Mr. Law's cellmate, sent me a copy of it, and I don't think he has a conformed copy either, so it's hard to tell whether it was filed or not. Well, I mean, the district court file doesn't have that in it, I take it. I don't remember whether I checked the court file to get it or not, so I can't represent that to you. Okay. I think we checked. I think it is not there. At any rate, Your Honors, I would suggest to the Court, at a minimum, this case does have to be remanded for an evidentiary hearing just to resolve that question of whether competency allowed or incompetency would have allowed the late filing of the petition. Thank you, Your Honors. Go ahead. Good morning, Your Honors. Deputy Attorney General David Cook for Respondent. First of all, with regard to Judge Fernandez's question, Petitioner was found guilty by jury on February 17, 1993. The guilty verdict form is in the appellee's excerpts at page 12. The district court properly found that the petition was untimely filed, and properly found that Petitioner was not entitled to equitable tolling in this case. Petitioner has attempted to substitute a new standard for equitable tolling by adopting a competent standard. However, that is not the standard for equitable tolling under this Court's precedent. That can only be overturned by an en banc panel or the Supreme Court. The standard is external forces made it impossible for Petitioner to file timely. In this case, counsel ---- What if he was in a cycle ward and he was all tied up for all those years? What would you do with that? Well, certainly, Your Honor, if he is tied up against his will, that would be an external force making it impossible for him to file timely. Assuming no other circumstances. Well, let's say he wasn't. You know, I mean, he was just in such a bad mental state, he's got a whole list of problems here. Schizophrenia, bipolar disorder, suicidal, deviation, loose thinking, paranoid. Well, certainly, Your Honor, I just, you know, kind of like out of it. Well, Your Honor, and I detailed the evidence of his mental condition in the Appley's brief, and as the district court found, that Petitioner does have some history of mental condition. However, that evidence also shows that when Petitioner is taking his medications, he's fine. But that's what the point of having a hearing is, is to find out, was he taking his medication? Was he fine? Wasn't he fine? I mean, there's certainly, there is, I don't know about certainly, but there is arguably enough here to suggest that at a point before the relevant period and at a point after the relevant period, although there's the question of what the second piece is in the record, he seems to have had extremely serious problems, whether they would have been of a kind that would have risen to the Calderon v. Kelly standard or not. We don't know. So it seems difficult to say that there's nothing here about a standard at this juncture. The problem is that we don't have facts. I beg to differ, Your Honor. The record also includes facts showing that Petitioner was able to file the State requests for relief as well as his Federal pleadings. He was able to file his requests for relief. The question here was whether it was impossible for him to file in the time we have. Well, he was at the time he filed it, but whether he was earlier is the question. Your Honor, he was on notice as early as May of the year 2000 when he filed his first superior court habeas petition that he needed to justify his delay. And in fact, his first superior court petition was denied for lack of diligence. And from 2000 until 2002, he's been on notice and had numerous opportunities to produce evidence or explanations showing that it was impossible for him to file his Federal petition on time. He hasn't done so. And I think the record will show that Petitioner has had his opportunities. He's had his opportunity to be heard. He's had his opportunity to be presented evidence. This is not a case similar to the earlier hypothetical posed by Judge Pragerson of a Petitioner tied up in some ward, unable to get access to his legal defense. He has been provided medication for his medical condition, and when he takes it, as the records show, he is able to file these pleadings. And again ---- Where does the record show that? I believe ---- excuse me, Your Honor. Where does the record show any connection between the medication and his ability or inability to file pleadings? Well, Your Honor, I don't think the records show that. I don't think the records show that. Those documents don't make a conclusion as to the medications linked to filing a Federal or State request for relief, but those records do show that with his medications, he is fully functional. Or has been at some time. Excuse me, Your Honor. Or has been at certain time. Well, again, Your Honor, there's nothing showing that he was incompetent or whether it was impossible for him to file the Federal petition on time. And again, it is his burden to ---- He's so alleged, right? He alleged that because of mental state, he was unable to file. Absolutely. And he provided some evidence showing that he certainly has a history of mental illness. And the issue, therefore, is whether that allegation and the evidence that he is not at least that he has some evidence of a history of mental illness, the significant evidence of a history of mental illness, is enough that there should at least be an inquiry into whether this is true. And if there's something disturbing about spending all this time trying to decide whether to have a hearing, whether just having and getting an R.O. or what? Well, again, Your Honor, the ---- It really, you know, you have a hearing, it takes a few hours, and that's the end of it, basically. Well, Your Honor, the record ---- Or a few days. I'm sorry. Excuse me. Or a few days. Or a few days, yeah. We spend more than that time on it. Your Honor, this is not a case where Petitioner has been denied an opportunity to be heard. Again, he's been on notice of the need to justify his delay for years. If I understand your position in a nutshell, it's simply that he did not submit evidence for this relevant period indicating that he was unable to file. He didn't submit anything about his mental condition in the relevant period, right? Absent that evidence, you would say there's no need for an evidentiary hearing. There's nothing to evidence. He's not submitted anything. Is that correct? That is correct, but I would go one step further to say that even during this period where he has been ---- where there's documents showing that he had been diagnosed with a major mental illness, he still was able to file his State and Federal pleadings. That's in 2000. In 2000 and as far as 2001 and 2002. Sure. I'm talking about the period from, what is it, 93, let's say? Well, 96 to 2000. 96 to 2000, right? Absolutely. And you cannot turn a blind eye, Your Honors, to the ability of him to file despite having his medical or mental condition. It would be disingenuous to say, well, he has he's taken medication or he's been diagnosed by some person at some point is having a problem. Ergo, he has justified the need for a hearing on whether it's impossible for him to have filed on time. When there is other records or there's other evidence and facts before the Court, which he has not controverted despite having these opportunities. Do you know the Whalum Hunt case that we just cited on Zonk, which was not about competence, but was about equitable tolling in the context? My recollection is that what we had there was an allegation under that there was no editor books in the library. And we said, if this is true, then there might be a problem. We didn't even say there was a problem. We said there might be. Therefore, there should be a hearing. Now, why isn't this the same circumstance? Because, Your Honor, the very- It's really an allegation. He had some support for it, not zero. I mean, in a sense, he has some record of the problem. Why isn't that sufficient to have a hearing, which is all this is about? Because he has demonstrated the very conduct that he- That's not true. That is not true, because it was not during the relevant time period. But, Your Honor, his medical condition is what it is, and apparently it has persisted. And yet, despite the persistence of that medical condition, he has, with assistance, been able to file. So the district court found, and under the abuse of discretion standard, I don't I submit that the district court did not abuse its discretion in finding that the petition was untimely, in finding that Petitioner was not entitled to equitable tolling, and in not holding an evidentiary hearing on this point. And, again, if Petitioner had evidence, he had plenty of opportunities to produce it. This is not the State trying to hide the ball here, Your Honor. The district court took careful note of the record. To save his record, they could have just probably a lot more easily accessible to it than he has to him. He could have gotten this whole thing over with by introducing the record to him. Well, again, that's not – that's up to the district court. And the district court had ample documents in front of it to make this determination. And I don't think – and I think that the district court acted within its discretion, especially in considering that the standard here is one of whether it was impossible for him to file. Your Honor, I see my time is up, unless the Court has further questions I would submit. Well, any further questions? No.  Thank you. Your Honors, if I may, one quick point in rebuttal. The Respondent has argued that Mr. Laws should not be granted any leniency because with assistance he's demonstrated he was able to file his pleadings timely at certain points in time. And I ask the Court to review Mr. Laws' notice of appeal, the second page of it, page 90, in which his cellmate and fellow inmate, Mr. Claiborne, writes that Mr. Laws over the years was only able to get someone to help him on occasion because he's regarded as a ding, a nutcase or a jaycat, which means other prisoners pay him no attention and won't help him for the most part. So it's quite possible that it was only because Mr. Laws met Mr. Claiborne that he was able to file these papers timely, or not timely, but at some point in time. Thank you, Your Honors. Thank you. That is submitted.
judges: Pregerson, Fernandez, Berzon